# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| CHARLES WRIGHT,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF WATERLOO, IOWA; AL BOVY, in his individual and official capacities; and ROB MICHAEL, in his individual and official capacities,<br><br>    Defendants. | No. C05-2055<br><br>**ORDER** |

_____

This matter comes before the court pursuant to Defendants' August 18, 2006 motion for summary judgment (docket number 14). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The plaintiff, Charles Wright, has brought claims against defendants City of Waterloo and Waterloo police officers Al Bovy and Rob Michael, arising from Mr. Wright's arrest and detention on October 21, 2004. Mr. Wright was arrested because he was mistakenly identified by Officers Bovy and Michael as Charles Horton, who was a wanted fugitive. Specifically, Mr. Wright seeks damages pursuant to 42 U.S.C. § 1983, alleging that the defendants violated the Fourth and Fourteenth Amendments to the Constitution for arresting and detaining him without probable cause or reasonable probable cause.

Defendants move for summary judgment, arguing that they are entitled to qualified immunity from Mr. Wright's § 1983 claim because they had probable cause to arrest Mr. Wright, and because there is no evidence of a violation of a "clearly established" constitutional right, i.e., Defendants Bovy and Michaels had "arguable probable cause"

1

and acted reasonably in arresting and detaining Mr. Wright. Defendant City of Waterloo, Iowa, contends that it is entitled to summary judgment in the absence of any evidence of unconstitutional municipal policy or custom, pursuant to which the officers were acting, and no evidence that inadequate training lead to the mistaken arrest of the plaintiff.

Mr. Wright resists Defendants' motion, arguing that there is a factual dispute concerning the existence of either probable cause or reasonable probable cause to arrest and detain him. Mr. Wright further argues that the absence of any custom, policy, or training by Defendant City of Waterloo, Iowa to guide its officers as to the proper identification of persons being arrested is itself a custom or policy for which the city is liable under § 1983.

## SUMMARY JUDGMENT

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)). In applying these standards, the court

must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. Krause v. Perryman, 827 F.2d 346, 350 (8th Cir. 1987).

## STATEMENT OF MATERIAL FACTS[1]

On Monday, October 18, 2004, at approximately 11:25 p.m., Defendant Bovy was on patrol on East Fourth Street in Waterloo, Iowa, when he stopped a vehicle operated by Howard Leflore. During this stop, Defendant Bovy observed a passenger in the front seat of Leflore's vehicle who identified himself as "Ricky Horton," but could not produce identification. After Defendant Bovy returned to his patrol car, he saw the passenger take off running. Defendant Bovy pursued the subject, but was unable to catch up with him. By the time Defendant Bovy returned to his patrol car, Leflore had left the scene. Defendant Bovy went to Leflore's house to ask about the individual who had fled from Leflore's vehicle. Leflore advised Defendant Bovy that the individual in question was a high school friend named Charles Horton. Upon further inquiry, Leflore told defendant Bovy that Horton lived on Niles Street, but was unsure of the address. Defendant Bovy then transported Leflore to Niles Street where Leflore identified 4021 Niles Street as Horton's residence.

On October 19, 2004, several officers from the Waterloo Police Department went to 4021 Niles Street to locate Horton. At this time Mr. Wright, his wife Ruby, and his son Charles Jr. resided at 4021 Niles Street. The Wright family had lived at this residence for 29 years. Mr. Wright's wife, Ruby Wright, answered the door and told the officers that Horton was her cousin, but that he did not live or stay at that residence. The officers did nothing to verify the accuracy of the information provided by Mrs. Wright, i.e., that Horton did not reside at 4021 Niles Street, in terms of public records, gas or utilities records.

---

[1] Where facts are in dispute, the version of the facts is taken in the light most favorable to Mr. Wright, the nonmoving party.

Defendant Bovy obtained a copy of an arrest warrant for Horton dated September 1, 2004, as well as a warrant dated August 21, 2002. The 2002 warrant listed 4021 Niles Street as the address for Horton. Defendant Bovy also reviewed Horton's arrest record, which described Horton's physical characteristics and listed 4021 Niles Street as his address.

On October 20, 2004, at approximately 11:30 p.m., Defendants Bovy and Michael, along with probationary officer John Heuer, went to 4021 Niles Street to see if Mr. Horton was present. Defendant Bovy knocked on the door and a male, later determined to be Mr. Wright and not Horton, answered. Officer Bovy said: "Charles?" and the male who answered the door responded in the affirmative. Neither Bovy nor Michaels asked if the "Charles" who answered the door was "Charles Horton."

Mr. Wright was in his underwear when he answered the door, so he told the officers that he needed to put some clothes on. The officers followed Mr. Wright to his bedroom, which is in the basement, where Mr. Wright put pants on. Mr. Wright and the officers then went upstairs. During this time, Defendant Bovy told Mr. Wright that they were there because Mr. Wright ran from them the other night. Mr. Wright denied running from the police. Mr. Wright thought he was being arrested for using a noisy generator at his rental property too late at night. According to Mr. Wright, he then told the officers that he needed to go to the bathroom. An officer followed Mr. Wright into the bathroom. After Mr. Wright went to the bathroom, defendant Bovy again accused Mr. Wright of being "the one that ran from me the other night." Mr. Wright responded "No, it wasn't me." Ruby Wright then told the defendants that they had the wrong Charles, i.e., this is her husband Charles Wright and they were looking for her cousin, Charles Horton. Defendant Bovy insisted that it was Mr. Wright who ran from him and told Mr. Wright that he had someone at the police station who would so identify him. At some point, Mr. Wright verbally identified himself as "Charles Wright."

Defendant Bovy took Mr. Wright's wallet, went though it, checked his identification, and told Mr. Wright that the identification was not him, that he was Charles Horton. Mrs. Wright testified that her husband showed the officers both his drivers' license and his John Deere work identification, which the officers responded could be false identification.

Mr. Wright was born on October 4, 1953. He is African American. He has short black hair and brown eyes. He is 5'10" tall. He weighs 195 pounds. Horton is also African American. His birthday is March 18, 1955. Horton has black hair and brown eyes. Horton is 6'0" tall and weighs 200 pounds.

Ultimately, Defendant Bovy transported Mr. Wright to the police station. Defendant Bovy had Mr. Wright sit in front of him while a picture of Horton was retrieved on the computer. After comparing the photo of Horton to Mr. Wright, Defendant Bovy determined that Mr. Wright was not the suspect and told Mr. Wright that he was free to go. Defendant Bovy offered to drive Mr. Wright home, but Mrs. Wright was waiting outside the police station. Mrs. Wright estimates that her husband spent less than 45 minutes at the police station.

## **CONCLUSIONS OF LAW**

### 42 U.S.C. § 1983 - Qualified Immunity

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivations was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). As set forth above, Mr. Wright alleges that his arrest and detention violated the Fourth and Fourteenth Amendments to the Constitution, as there was neither probable cause nor arguable probable cause to arrest and/or detain him. Defendants Bovy and Michaels contend that they are entitled to qualified immunity from Mr. Wright's claims.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). It is "available to government officials who prove their conduct did 'not violate clearly established statutory or Constitutional rights of which a reasonable person would have known.'" Hill v. Scott, 349 F.3d 1068, 1071 (8th Cir. 2003) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is not a defense to liability. Saucier, 533 U.S. at 200. In resolving qualified immunity issues, the threshold inquiry is whether the facts as alleged and taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right? Id. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. at 201. If a constitutional violation could be made out, however, the second inquiry is whether the constitutional right was clearly established. Id. The "clearly established" question is a particularized inquiry, meaning that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Summary judgment based upon qualified immunity is proper "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful." Id.

"By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." Baker v. McCollan, 443 U.S. 137, 142-43 (1979) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)). "The Fourth Amendment right of citizens not to be arrested without probable cause is clearly established." Hill, 349 F.3d at 1072 (citing Habiger v. Fargo, 80 F.3d 289, 295 (8th Cir.

6

1996)). To prevail on this claim, Mr. Wright must demonstrate that Defendants Bovy and Michaels "(1) had no probable cause to arrest him, and (2) raise a genuine issue of material fact about whether reasonable officers would have known [defendants'] conduct would have violated the Fourth Amendment." Id. (citing Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000)). "The rule in [mistaken identity] cases is that mistaken arrest based on a facially valid warrant does not violate the Fourth Amendment if the officers reasonably mistook the arrestee for the person named in the warrant." Id. (citing Hill v. California, 401 U.S. 797, 802 (1971)). "To determine the reasonableness of the arresting officers' mistake, the court must look at the totality of the circumstances surrounding the arrest." Id. at 1073 (citations omitted). "[H]indsight is not the question." Id.

It is undisputed that there was an outstanding warrant for Charles Horton's arrest. Mr. Wright does not challenge the validity of this warrant. The warrant listed 4021 Niles Street as Horton's address. Leflore, who was with Horton two nights before the incident at issue and described himself as a high school friend of Horton, identified 4021 Niles Street as Horton's residence. Horton's criminal arrest records listed 4021 Niles Street as his address. Mr. Wright and Horton are less than two years different in age, two inches different in height, and five pounds different in weight. They are both African-American, and they both have short black hair and brown eyes.

The only disputed facts presented to the court involve whether, when, and to what extent Mr. and Mrs. Wright protested his arrest and proclaimed his innocence, i.e., whether Mr. Wright showed the arresting officers his driver's license and work identification badge inside the house or at the squad car, whether Mr. Wright inadvertently apologized for/admitted to running from Defendant Bovy two nights prior, and whether the arresting officers told Mr. Wright that they had someone at the police station who could identify him. These disputes are not material to the court's determination of reasonableness. See Baker, 443 U.S. at 145 (noting that plaintiff's innocence is "largely irrelevant" to his § 1983 claim because "[t]he Constitution does not guarantee that only the

7

guilty would be arrested"); Hill, 401 U.S. at 803 (noting that "aliases and false identifications are not uncommon" and that plaintiff's subsequent production of identification was entitled to little weight in light of his evasively answering a question posed by the police); Patterson v. New York, 432 U.S. 197, 208 ("Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.").

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate every claim of innocence, whether the claim is based on mistaken identity, or a defense such as lack of requisite intend. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocense is placed in the hands of the judge and jury.

Baker, 443 U.S. at 145-46.

Taking into consideration the totality of the circumstances, outlined above, the court concludes that Defendants Bovy and Michaels acted reasonably, albeit mistakenly, in arresting and detaining Mr. Wright. They are entitled to qualified immunity. Defendants Bovy and Michaels' motion for summary judgment is granted.

### Municipal Liability - Policy or Custom

A municipality cannot be held liable under § 1983 for an injury inflicted solely by its employees on a theory of respondeat superior. Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998). In the absence of conscience-shocking conduct by a government official, a plaintiff seeking to impose municipal liability must identify either an "official municipal policy or a widespread custom or practice that caused the plaintiff's injury." Id. "The identification of an official policy as a basis upon which to impose liability ensures that a municipality is held liable only for constitutional

deprivations 'resulting from the decisions of its duly constituted legislative body or for those officials whose acts may fairly be said to be those of the municipality.'" Id. (quoting Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at ---, 117 S. Ct. at 1388). "Although municipal liability for violating constitutional rights may arise from a single act of a policy maker, that act must come from one in an authoritative policy making position and represent the official policy of the municipality." McGautha v. Jackson County, MO, Collections Dept., 36 F.3d at 53, 56 (8th Cir. 1994). In this context, a "policy" means "an official policy, a deliberate choice of guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 2002).

Actions performed pursuant to a municipal "custom" not specifically approved by an authorized decisionmaker "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. To prevail on a "custom" claim, the plaintiff must prove:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Id. (citing Jane Doe "A" v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990)). If the City of Waterloo actually instituted a policy or custom which deprived the plaintiff of his constitutional rights, then he must illustrate that the city's actions in so doing were taken with "deliberate indifference as to its known or obvious consequences." Shrum v. Kluck, 249 F.3d 773, 779 (8th Cir. 2001) (quoting Brown, 520

U.S. at 398). See also Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) ("The plaintiffs must show that the district officials received notice of a pattern of unconstitutional acts, demonstrated deliberate indifference to the acts, failed to take sufficient remedial action, and that such failure proximately caused the injury to the students.").

"Liability for an unconstitutional custom or usage, however, cannot arise from a single act." McGautha v. Jackson County, MO, Collections Dept., 36 F.3d 53, 56 (8th Cir. 1994) (citing Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991) ("a single deviation from a written, official policy does not prove a conflicting custom or usage") and Williams-El v. Johnson, 872 F.2d 224, 230 (8th Cir.), cert denied, 493 U.S. 871 (1989) (one occurrence of improper prison guard hiring contrary to official written policy "does not prove the existence of a" conflicting custom or usage)). See also Mettler, 165 F.3d at 1205 ("A single incident normally does not suffice to prove the existence of a municipal custom.").

As set forth above, Mr. Wright sustained no constitutional injury. Moreover, he has set forth no evidence of a policy or custom by the City of Waterloo which guided defendants Bovy and Michaels' actions. To the contrary, Mr. Wright argues that the absence of a custom, policy, or training by the City of Waterloo regarding the identification of persons being arrested is itself a custom and policy for which the City of Waterloo is liable. However, "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy as defined by our prior cases - can a city be liable for such a failure under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). As set forth below, Mr. Wright's failure to train theory must fail as well.

## Municipal Liability - Failure to Train

A municipality may be found liable under § 1983 if a complainant's injuries resulted from the municipality's failure to receive, investigate and act upon complaints of misconduct of its employees. S.J. v. Kansas City Missouri Public Sch. Dist., 294 F.3d 1025, 1028 (8th Cir. 2002). Likewise, a municipality may be liable under § 1983 for its

failure to train its employees in a relevant respect which evidences a deliberate indifference to the rights of its citizens. Id. at 1029. "To establish this 'deliberate indifference,' [the plaintiff] must offer evidence that the [municipality] 'had notice that [their] procedures were inadequate and likely to result in a violation of constitutional rights.' " Id. (quoting Thelma D. v. Board of Educ., 934 F.3d 929, 934 (8th Cir. 1990)). Plaintiffs may show that defendants had notice of the inadequacy of their procedures in two different ways, i.e., by showing that the failure to train their employees "is so likely to result in a violation of constitutional rights that the need for training is patently obvious," or by showing a "pattern of misconduct [indicating] that the [municipality's] responses to a regularly recurring situation are insufficient to protect the [citizens'] constitutional rights." Id. (internal quotations omitted). See also Smith v. Watkins, 159 F.3d 1137, 1138 (8th Cir. 1998) ("a plaintiff can make out a failure to train by showing that the city officials were deliberately indifferent to deficient training programs or special training needs"); P.H. v. Sch. Dist. of Kansas City, MO, 265 F.3d 653, 660 (8th Cir. 2001) ("To establish § 1983 liability on the part of a school district for failure to adequately train its employees to report and prevent sexual abuse of students, there must be proof that this failure to train evidences a deliberate indifference to the rights of the students."). "It is necessary to show that 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have deliberately indifferent to the need.' " Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)). To require anything less would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." City of Canton, 489 U.S. at 392.

However, even if the training is deficient in some manner, the plaintiff must nonetheless establish that the training deficiency was the actual cause of the offending conduct. Andrews, 98 F.3d at 1076. "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" City of Canton, 489 U.S. at 391.

Again, no constitutional violation occurred. Nonetheless, Mr. Wright has set forth no evidence that the City of Waterloo had notice regarding any alleged deficiency in the procedure its police officers used in identifying arrestees, that the City of Waterloo was deliberately indifferent to a need for additional training, or that any such training deficiency was the cause of the arresting officers' conduct. Defendant City of Waterloo, Iowa is entitled to summary judgment.

Upon the foregoing,

IT IS ORDERED that defendants' motion for summary judgment is granted. Judgment shall enter in defendants' favor. This case is dismissed with prejudice.

December 4, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT